# Post's Appeal.

*Extinguishment of Lien by Merger.—Lien on Equitable Title how affected by conveyance of Legal Title by Lien-Holder.*

1. Where A. made a deed for lands, intending to convey the whole title, but failed to give a complete conveyance, on account of an outstanding equitable title in B. upon which he held the first lien, the attempted sale of the legal title by A. did not invalidate his lien upon the equitable title of B.

2. Where, by means of the conveyance of A., B. sold the land for certain goods, under an arrangement that the proceeds were to be applied to the payment of his debts, including A.'s lien, which was also to be a lien upon the goods received by B., *held,* that the lien of A. was not thereby paid, without proof that he took the goods in payment or got his pay out of them, and agreed to discharge it.

3. The holders of liens subsequent to A. have no equity against him arising out of his efforts to have all the liens paid, when they were not affected by his acts. The transaction was for the benefit of all, and the subsequent lien-holders cannot claim that it shall be regarded as an equitable or constructive discharge of A.'s lien, while they insist upon their own.

APPEAL from the Common Pleas of *Susquehanna county.*

This was an appeal by Isaac L. Post, Leonard Searle, M. S. Wilson, and B. S. Bently, from the decree of the Common Pleas, in the matter of the distribution of the moneys arising from the sale of the real estate of F. A. Ward.

F. A. Ward, with F. M. Williams, held by contract certain lands in Oakland and Harmony townships, in said county, the legal title to which was in C. L. Ward. The contract price to be paid was $5000. On the 1st of September 1854, a judgment was entered to November Term 1854, against F. A. Ward, in favour of C. L. Ward, for $3061.04, which, it was averred, was the balance due on other accounts settled up to that date. This judgment was followed by sixteen others for various amounts, which were entered up against F. A. Ward between the 2d of April 1855 and the 8th of December 1857, among which were the judgments of the appellants and that of A. J. Davis, under which latter, in April 1859, certain of these lands were sold, the proceeds of sale paid into court for distribution, and an auditor appointed for that purpose. The money in court was $1519, the whole of which, less the costs of sale and expenses, was claimed before the auditor by parties representing the judgment of C. L. Ward, on the ground that it was prior to all other liens against the defendant. This was resisted by the subsequent lien-creditors of F. A. Ward, who averred that C. L. Ward had entered into arrangements, and done certain things, the legal effect of which was to divert the fund in court from the course of distribution indicated by the record.

In support of this a large amount of testimony was taken before the auditor, and returned by him with his report. The material facts appear to be as follows:—

Under an arrangement negotiated by F. A. Ward, and concurred in by Williams and C. L. Ward, certain of these lands had been sold, after the entry of Davis's judgment, to Graham & McBirney, of New York, who were to deliver goods invoiced at $50,000, and receive $12,500 in cash, and a warranty deed from C. L. Ward for the lands mentioned in the agreement between them, and which were included in the tracts afterwards sold by the sheriff.

It was also agreed that the goods should be deposited with Mr. York, a jobber in New York, who was to advance thereon $12,500 : he was then to dispose of the goods at the best jobbers' prices, and apply the proceeds first to his advances and commissions, then $1000 to Messrs. Hays, $1000 to a Mr. Lewis, a certain sum to Mr. Smith ; after that the claim of C. L. Ward was to be paid in full, then the creditors of F. A. Ward, and the balance, if any, to F. A. Ward.

This arrangement was in parol. Under it Williams gave a power of attorney to F. A. Ward, for all his interest in the lands. F. A. Ward gave a deed for Williams's interest, in accordance therewith, to C. L. Ward. C. L. Ward then executed deeds for these lands to Graham & McBirney, with a covenant of general warranty, to be delivered on receipt of the goods as above stated, and then went to Europe.

After examining the land, Messrs. Graham & McBirney declined carrying out the contract, whereupon a new agreement was made with them in writing by F. A. Ward, to which C. L. Ward was not a party. Under this new agreement, F. A. Ward agreed to take $47,000 of goods, leaving $2000 in the hands of York to secure Graham & McBirney against judgments. This arrangement was not entirely successful. No portion of the proceeds of these goods went to the payment of C. L. Ward's claim, although on his return from Europe they were redeemed by him from York, by the payment of his claim of $8984.18, and placed by him in other hands for sale.

Subsequent to this, C. L. Ward sued out a *sci. fa.* on his judgment against F. A. Ward, as terre-tenants, but afterwards discontinued it as against one of the vendees of Graham & McBirney.

At the sheriff's sale, which produced the fund in court, C. L. Ward gave notice to the sheriff in writing, to the effect that the first eight tracts mentioned in the writ were held by F. A. Ward, under a contract with him, on which there was unpaid $6376, and subject to which the sale was made ; and that F. A. Ward had no title to the remaining seven tracts. At the sale, C. L.

[Post's Appeal.]

Ward purchased the five tracts that were sold, after which the sale was stayed.

The lien-creditors of F. A. Ward, who were subsequent to C. L. Ward, claimed that the fund arising from the sale of these lands should be applied to their claims, for the following reasons :—

1. C. L. Ward had purchased and again sold the lands in question, by means of which the lien of his judgment was extinguished.

2. Because he in fact has been paid.

3. His acts, and those of F. A. Ward, in the sale to Graham & McBirney, the notice given to the sheriff, and his becoming a purchaser at the sale, estop him from claiming the money against the other judgment-creditors.

4. C. L. Ward was bound by the arrangement above mentioned, as Williams was. Under it Williams was to receive, and did receive goods for his claim, and therefore Ward was bound to do so. And,

5. His issuing a *sci. fa.* on his judgment, and discontinuing it as against a grantee of Graham & McBirney, is inconsistent with his present claim.

The auditor rejected the claim of C. L. Ward, and distributed the net balance to the subsequent lien-creditors of F. A. Ward as far as it would reach, paying thus the claims of the appellants in full.

Exceptions were filed to this report by C. L. Ward, which, on argument, were sustained by the court below, by whom the distribution of the auditor was reversed, and the money in court distributed to the claim of C. L. Ward.

From this decree the creditors above named appealed to this court, assigning the same for error.

*Bently & Fitch*, for appellants.—There are but two questions involved in this case :—

1. As to the question of fact.

The appellants claimed specifically before the auditor, at the commencement of the investigation, that the judgment in favour of C. L. Ward, *as a matter of fact*, had been paid. Upon this issue much evidence was given upon both sides. After repeated adjournments to enable the parties to get additional evidence, and after a full and protracted investigation of the whole matter, the auditor reported, *as a fact*, that said judgment had been paid. The finding of an auditor is conclusive, unless some error is discovered, and pointed out in the exceptions; as also the deductions and inferences drawn by him from the evidence, unless there was palpable error: Stehman's Appeal, 5 Barr 413; Men-

gas's Appeal, 7 Harris 222; Miller's Appeal, 6 Casey 492; Whiteside's Appeal, 11 Harris 116.

Was there any "palpable" or flagrant error in the report of the auditor in this case? We insist that there was *no error* at all, and that the facts found by him were true. They were alleged at the commencement, and established by the evidence.

2. Under the uncontroverted facts in the case, the rule of law is—

" That all liens are extinguished by merger when the ownership of the title of the premises bound by the lien, and of the lien concentrate in the same person. A man cannot have a lien against his own property :" 5 Rawle 159; 8 W. & S. 200.

" In equity the lien may not always merge, where there was a clear intention to retain it for a clear and proper purpose. But even equity insists upon merger when necessary to protect innocent parties who may have been misled by the apparent state of things :" Price on Liens 237; 2 Watts 233.

Apply this principle to our case. C. L. Ward, holding this judgment against F. A. Ward, received a deed from F. A. Ward for his equitable interest in the lands bound by the said judgment, and *eo instanti* became the owner of the fee. He then conveyed the whole ownership to Graham & McBirney for a full price, which was actually paid and receipted in the deed, which is put upon the record as notice to the subsequent lien-holders against F. A. Ward. C. L. Ward himself puts this state of facts before the public, and then at the sheriff's sale gives notice that F. A. Ward has no interest in the lands to be sold, still further embarrassing the whole matter, and serving to reduce the very fund which he now claims against subsequent creditors. If the lands did not bring enough at the sheriff's sale to pay all the liens upon them, it was because of the embarrassments thrown in the way by C. L. Ward. Equity will insist upon his now remaining out of the way. His lien sunk in the fee when both were united in him. If not, it certainly was gone when he conveyed with covenant of warranty to his vendees. It is admitted that C. L. Ward cannot hold this lien against the lands in the hand of his vendees. But they claim that he may, as against subsequent creditors, protect his vendees. They need no such protection, and do not ask it. They rely upon their warranty, and have nothing to do with C. L. Ward's judgment.

It is said that C. L. Ward may keep his own judgment a lien against lands that he has sold and conveyed *to protect himself from the consequences of his own warranty.* C. L. Ward must then have some paramount equity springing from the fact that he would lose his judgment entirely if its lien be not preserved, for his equity could not arise from any other fact. It is not controverted that the whole title to the lands was sold to be paid

in merchandise, that the merchandise was delivered in pursuance of the sale, and that, in pursuance of said arrangement, C. L. Ward did convey the *whole title* to his vendees. Was not merchandise a good consideration? and, if delivered, was it not as full payment and extinguishment of the judgment when the deed was made and delivered, as though the consideration of the deed had been paid in money?

Even if, instead of C. L. Ward's purchasing in the equitable title of F. A. Ward, and conveying it away with his legal title, he had sold his legal title to F. A. Ward, and F. A. Ward received the full consideration of the sale to Graham & McBirney, and thus became the debtor to C. L. Ward for his legal title, we cannot see how it would help the matter. If he received the consideration for his deeds in full, as agreed upon with the parties to whom he gave them, is it not a legal presumption that his liens against the lands sold were paid and extinguished? If so, of course he has no equity that would save him from the legal effect of a merger.

"Later liens are favoured, and facts short of payment have postponed earlier ones in their favour, thus: the seizure of goods in execution postpones the land liens on the judgment in all cases, except when the plaintiff is deprived of the fruit of his levy without any fault of his own:" Lyon *v.* Hampton, 8 Harris 49.

Potential payment is as good as actual. What is the lien of a judgment good for against lands, unless something can be done towards its collection, which, it is admitted here, cannot be done? It has no vitality. It cannot be revived against the lands. F. A. Ward having conveyed all his interest in the lands to C. L. Ward, and he to his vendees, there is not one scintilla of interest that a lien can fasten on. The fallacy of the whole thing is shown by the attempt of C. L. Ward to revive his judgment against F. A. Ward. The writ was served upon the terre-tenants as to whom he discontinues upon the record, and takes his judgment against F. A. Ward. What interest had F. A. Ward in the lands when judgment of revival was taken?

Mr. Ward has no right, for the purpose of protecting himself against his own acts, to ask that all the difficulties and fallacies shall be introduced into the law regarding liens, revivals, &c., that must be done if their views are correct. The money, on sale, is substituted for the land. If no lien upon the land, there can be none upon the money. If there were a lien that would hold either the one or the other, then there must be a way of continuing that lien. And how can that be done in this case as against the subsequent judgments? When a man sells and conveys lands with covenant of warranty, *knowing all the circumstances at the time,* he should not be permitted to hold a judgment

against the lands so sold and conveyed by him, for any purpose whatever—that if he hold one himself, it is extinguished; and that if he should buy one of any other person against the estate that he had conveyed, that that should be extinguished as soon as it comes into his hands.

*W. & W. H. Jessup*, for C. L. Ward.—The only material points in this case, as raised by the argument of the appellant, are two :—

1. Did the conveyance by C. L. Ward to Graham & McBirney, of the lands contracted to be sold to F. A. Ward, extinguish his judgment lien as against junior judgment-creditors of F. A. Ward?

2. Under the arrangements made by F. A. Ward with Graham & McBirney, for the goods, did C. L. Ward receive his pay upon his judgment?

If these points be answered in the negative, the appeal must be dismissed.

As to the first—

This is a question between creditors having a lien upon an equitable interest in lands held under a contract. The parties to this appeal are all creditors of F. A. Ward. The interest of F. A. Ward was sold upon a judgment having a lien on that interest, prior to the sale by C. L. Ward to Graham & McBirney. The fund in court represents the equitable interest of F. A. Ward in the lands sold. The first judgment lien is that of C. L. Ward.

If a vendor hold a judgment upon his vendee's interest in lands, prior to other judgments, does a sale to a stranger destroy his judgment lien, so as to let in the junior judgments ahead of his? A plain statement of the proposition would seem to be its answer. It is said that this sale destroyed the lien of the judgment as to Graham & McBirney, because they received a general warranty deed, and that as to them the lien was gone. This might be conceded, without in the least affecting the rights of C. L. Ward. Indeed, the fact that he had given this general warranty deed, would be a sufficient reason why he ought to hold the lien of his judgment against his vendee, so as to protect his own interest as against junior judgments.

While C. L. Ward held the legal title, his judgment was the first lien upon the equitable interests of F. A. Ward, under his contract. The appellees were subsequent to him, and if they had sold before the conveyance to Graham & McBirney, there could be no pretence of claim to the fund prior to C. L. Ward's judgment. But, anything C. L. Ward, Graham & McBirney, or F. A. Ward could do, would in no way impair the validity or lien of these judgments. When the property was sold by the sheriff, the liens of all the judgments bound all the interest of F. A. Ward

in these lands. That lien was in no sense affected by C. L. Ward's conveyance. It follows, that if the act of C. L. Ward, in conveying to Graham & McBirney, operated in no respect to injure the rights of the judgment-creditors, their cause of complaint against it is without foundation, and the rights of C. L. Ward, as senior creditor, cannot be divested.

The argument of the appellant is based in part upon an error in fact. C. L. Ward never received either a deed or any other conveyance from F. A. Ward for his equitable interest in the lands. He was always the owner of the fee, and was never the owner of F. A. Ward's equity, until he acquired it by the sheriff's deed. When thus acquired, it enured to the benefit of his grantees, and their title was perfected.

C. L. Ward had a right to transfer his legal title when and to whom he pleased, and for any consideration that he might agree upon. No judgment-creditor was or could be injured by any such arrangement. He might take goods, or money, or stock, and unless his judgment were paid by or for F. A. Ward, he could not be deprived of his lien as between him and the younger judgment-creditors of F. A. Ward.

The argument of the appellants is based upon the allegation, that because Graham & McBirney might defeat the lien of C. L. Ward's judgment; therefore, strangers shall be permitted, for their own benefit, to do the same. The fallacy of such an argument has been clearly shown.

As to the second position, that the judgment of C. L. Ward has been paid:—

It is not pretended that C. L. Ward ever received from the avails of the goods as much money as he actually advanced upon their account. The purchase-money due upon the contract, independent of the judgment, is still unpaid; and, if his rights under his judgment be taken away, he not only loses the purchase-money, and the amount due on his judgment, but he is obliged to pay the money in court to the younger judgment-creditors.

The cases cited, tending to establish the conclusiveness of the auditor's report, upon the finding of the facts, do not apply here, for the auditor has *not found any facts*, except by the conclusions to which he has arrived, *arguendo*, from the evidence which he makes a part of his report. His whole report is an argument; and his conclusions, *not finding of facts*, but deductions from the evidence.

There was no agreement, either express or implied, that the goods were taken in payment of the judgment, so far as F. A. Ward was concerned. The whole transactions were between C. L. and F. A. Ward. Surely, F. A. Ward could not allege payment; and as the arrangements did not prejudice the liens of the

judgments, the judgment-creditors are in no better situation than F. A. Ward.

An examination of the evidence establishes the fact that C. L. Ward did not receive the amount of advances made him; and, if the argument of the appellant is to prevail, then he is to be deprived of his first lien for purchase-money; his first lien on his judgment; and obliged to pay $1549 to the junior judgment-creditors.

It cannot be necessary to reply to that part of the appellants' argument relating to *merger;* for the question being between creditors, that question is not properly raised. The argument of the auditor, in reference to the value of the lien of the judgments being diminished by the sale of C. L. Ward, and the similar argument of the counsel, is wholly refuted by the statement of the position of the parties, to wit:—

C. L. Ward, the owner, agrees to sell to F. A. Ward for $5000. The interest of C. L. Ward is thus measured *in numero.* He cannot increase it by any act of his. The judgments are a lien upon all the lands are worth beyond that sum, and thus the value of the liens is ascertained. The conveyance to Graham & McBirney did not add to the purchase-money, which alone could affect the *value* of the lien.

The opinion of the court was delivered, May 15th 1861, by

LOWRIE, C. J.—C. L. Ward *intended* that his deed to Graham & McBirney should be or become a complete conveyance of the land, and of course he intended the consequence that his own liens upon any part of the title should be thereby discharged. It was not the *intention,* but the fact of complete conveyance that was to have that effect. The fact failed, and therefore the effect does not arise. The conveyance did not pass the whole title, because of the outstanding equitable title of F. A. Ward, which had become subject to liens, the first of which was in favour of C. L. Ward. This interest continued, and of course the liens on it continued; and instead of it, Graham & McBirney held C. L. Ward's covenant of warranty. It was not title, but covenant for title, which they had actually got, and the continuance of C. L. Ward's lien was not inconsistent with that, but might be in aid of it. His lien was not upon the legal title which he had held, and had conveyed to Graham & McBirney, but on the equitable title, which he was bound to remove. The enforcement of his lien against this can have no effect upon the title of Graham & McBirney, and they cannot be parties to the proceeding; for it is only against the equitable title, which, so far as lien-creditors are concerned, belongs to F. A. Ward, and not to them.

Then, has C. L. Ward been actually paid his lien? We think

not; and in saying so, we adopt the auditor's report of the facts, but not his view of their legal effect.   C. L. Ward was to have, and had a lien on the goods purchased, in order to obtain payment out of them, but he did not obtain it.   He had means designed to secure payment, but never payment itself.   The goods were not his; no part of them had been sold to him in discharge of his claim; but he had a lien on them all to secure it.   But they did not secure it.

The sale of the land was not C. L. Ward's sale, but F. A. Ward's, though effectuated by means of a conveyance of C. L. Ward, because he held the legal title.   The goods obtained by that sale were not C. L. Ward's goods, but F. A. Ward's, to be sold at his profit or loss, and the proceeds to be his; though, by virtue of a lien in favour of C. L. Ward, through the possession of a third person, those proceeds were to be applied first to certain debts of F. A. Ward, including those owed to C. L. Ward. No one says that C. L. Ward took the goods as payment, or that he got his pay out of them, or that he agreed to discharge his liens, and we do not regard either of these as the necessary legal effect of his acts.

The subsequent lien-creditors have no equity against C. L. Ward, arising out of his acts.   No act of his affected their liens. He was striving to get all the liens paid, but did nothing to weaken those that are here complaining.   He could not do it. He failed in his efforts, without either injuring or benefiting them, and they have no equity to put him in a worse position for his own claims, because of his want of success.   And as the goods were delivered in consideration of an engagement for a full title, discharged of liens, they can have no claim that the transaction shall be regarded as an equitable or constructive discharge of C. L. Ward's lien, while they continue to insist on their own.   They must show that the lien was in fact and in law discharged.   They have not done this.

Decree affirmed at the costs of the appellants.